# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6456 | **DATE** | 3/22/2001 |
| **CASE TITLE** | ROBERT J. SCHWERTFEGER, et al vs. VILLAGE OF SAUK VILLAGE | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's motion to strike and the summary judgment motions of both plaintiffs and defendant are denied. Status hearing set for 4/11/01 at 9:15a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | 3/23/01 date docketed | |
| | Notified counsel by telephone. | | | 71 |
| ✓ | Docketing to mail notices. | | C.S. docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
MAR 23 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT J. SCHWERTFEGER, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 99 C 6456 |
| | ) Paul E. Plunkett, Senior Judge |
| VILLAGE OF SAUK VILLAGE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, who are employed by defendant as police officers, have sued defendant for its alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") for requiring them to attend, without pay, fifteen-minute briefing sessions before the start of each shift. Both parties have filed a Federal Rule of Civil Procedure 56(c) motion for summary judgment and defendant has filed a motion to strike various materials submitted by plaintiffs in support of their motion. For the reasons set forth below, all of the motions are denied.

### The Motion to Strike

Before we can reach the merits of these motions, we must address defendant's motion to strike. First, defendant asks us to strike various paragraphs from plaintiffs LR 56.1(a) Statement because they are legal conclusions or argument, are not supported by the cited evidence or are "non-dispositive." (See Def.'s LR 56.1 Reply & Add'l Facts Stmt. Resp. Pls.' Stmt. Facts & Def.'s Mot. Strike Pls.' Stmt. Facts & Aff. at 9-10.) Defendant says that "[p]laintiffs' failure to comply with

Local Rule 56.1 constitute grounds for striking Plaintiff's Statement of Facts." (Id. at 10.) Local Rule ("LR") 56.1, however, says nothing about striking assertions from fact statements. Though many courts, including this one, have entertained and granted such motions, they are unnecessary. If defendant notes in its response to plaintiffs' facts that certain statements do not comply with LR 56.1, and it has, the Court will do as the rule instructs and disregard them. Because we have disregarded any "facts" submitted by plaintiffs that do not comply with LR 56.1, defendant's motion to strike them is denied as moot.

Defendant also seeks to strike the affidavit of Lara Walicek and Exhibit D, a compilation of damages calculations, that was submitted with it. Because we have denied plaintiffs' motion for summary judgment on liability, however, we did not reach the issue of damages. Thus, the Court gave no consideration to the Walicek affidavit or Exhibit D. Defendant's motion to strike these materials is, therefore, denied as moot.

## Facts

Plaintiffs are or were employed as full or part-time patrol officers, sergeants or telecommunications operators ("TCOs") by defendant. (Pls.' Answers & Objections Def.'s LR 56.1(a) Stmt. ¶¶ 5-6, 9, 10.) The patrol officers and TCOs are represented by unions and are covered by collective bargaining agreements ("CBAs") negotiated with defendant by their respective unions. (Id. ¶¶ 7-8, 11-12.) The sergeants are not covered by a CBA. The rules and policies applicable to the sergeants are contained in the Sauk Village Employee Manual. (Def.'s Reply Pls.' LR 56.1(b) Stmt. ¶ 24.)

The CBAs and the Employee Manual address various working conditions of the patrol officers, TCOs and sergeants including their hours of work and payment for overtime. (See generally Exs. Def.'s Mot. Summ. J. & Stmt. Facts, Ex. E, 1998-2001 Sauk Village/FOP Communications Division Agreement, id., Ex. E, 1996-1998 Sauk Village/FOP Communications Division Agreement; id., Ex. E, 1996-1999 Sauk Village/FOP Lodge #234 Agreement; id., 1999-2002 Sauk Village/FOP Lodge #234 Agreement; id., Sauk Village Employee Manual.) The CBAs each contain a provision substantially like the following: "In recognition of a paid 30 minute lunch and two 15 minute breaks (when practicable) in the work day employees will be required to attend a 15 minute 'roll call' shall [sic] be inclusive in calculating the 8 hours and shall not be the cause of overtime." (Id., Ex. E, 1996-1999 Sauk Village/FOP Lodge #234 Agreement, § 17.5; id., 1999-2002 Sauk Village/FOP Lodge #234 Agreement, § 17.5; id., Ex. E, 1998-2001 Sauk Village/FOP Communications Division Agreement, § 17.1, id., Ex. E, 1996-1998 Sauk Village/FOP Communications Division Agreement, § 17.1.)

Notwithstanding the CBAs, plaintiffs contend that their break periods are compensable time and cannot be offset against roll call. They claim that defendant's practice of offsetting those periods violates the FLSA, and that defendant owes them overtime for the fifteen minutes they spend in roll call each work day.

### The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. Id.

## Discussion

Relying on Leahy v. City of Chicago, 96 F.3d 228 (7th Cir. 1996), defendant argues that the claims of the patrol officers and TCOs are barred by the CBAs that apply to them. In Leahy, a group of Chicago police officers sued the City of Chicago under the FLSA for failing to pay them for their meal periods, which they claimed constituted compensable work under the Act. The district court granted summary judgment to the City on the grounds that the meal periods were not compensable time, and the plaintiffs appealed. Id. at 230.

The Seventh Circuit began its opinion by noting that the Supreme Court permits "employers and employees [to] resolve whether certain activity is 'work' through a collective bargaining agreement, as long as the agreement comports with the FLSA." Id. at 232. Because the officers worked eight and one-half hour shifts, including a half-hour meal period, and the CBA required that officers who worked more than 80 hours in a 14-day period be paid overtime, the court concluded that the agreement defined meal periods as non-working time. Id. To the extent any officer actually worked through a meal period, the court said, the CBA's overtime provision would protect his right to payment in accordance with the FLSA. Id. Because the CBA protected the officers' FLSA rights and the CBA grievance procedure was the most efficient method of handling individual officers'

claims that they worked through their meal periods, the court held that the officers' FLSA claims were barred by the CBA. Id.

The majority opinion in Leahy did not mention the Supreme Court's decision in Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728 (1981). In Barrentine, the Supreme Court reversed the Eighth Circuit's ruling that plaintiffs' submission of their wage claim to arbitration pursuant to their CBA barred them from bringing a FLSA claim in court. 450 U.S. at 745. In the words of the Court:

> [T]he FLSA rights petitioners seek to assert in this action are independent of the collective-bargaining process. They devolve on petitioners as individual workers, not as members of a collective organization. They are not waivable. Because Congress intended to give individual employees the right to bring their minimum-wage claims under the FLSA in court, and because these congressionally granted FLSA rights are best protected in a judicial rather than in an arbitral forum, we hold that petitioners' claim is not barred by the prior submission of their grievances to the contractual dispute-resolution procedures.

Id. at 745.

Undoubtedly, the Seventh Circuit was aware of the Barrentine decision when it decided Leahy. Against the backdrop of Barrentine, defendant's reading of Leahy – that any employee covered by a CBA with an overtime provision is barred from bringing a FLSA claim – is too broad. A more reasonable interpretation is that it is appropriate for employers and employees who define compensable work in their CBA to resolve disputes about that issue through the CBA's grievance procedures. But when an employee is not being paid for work that is clearly compensable, like the roll call at issue here, Barrentine protects the employee's congressionally-granted right to seek redress through the FLSA in court.

Defendant contends that this is nothing more than a dispute about the definition of work contained in the CBAs. We disagree. There is no dispute that the CBAs define roll call as compensable time. (See Exs. Def.'s Mot. Summ. J. & Stmt. Facts, Ex. E, 1996-1999 Sauk Village/FOP Lodge #234 Agreement, § 17.5; id., 1999-2002 Sauk Village/FOP Lodge #234 Agreement, § 17.5; id., Ex. E, 1998-2001 Sauk Village/FOP Communications Division Agreement, § 17.1, id., Ex. E, 1996-1998 Sauk Village/FOP Communications Division Agreement, § 17.1.) The question is whether plaintiffs are, in fact, being paid for this clearly compensable work. As a result, the FLSA claims of the patrol officers and TCOs are not barred by the CBAs that apply to them.

Defendant's next argument is that it is entitled to the partial overtime exemption that the FLSA provides to public employers. That exemption allows public employers who establish a 28-day work period for their law enforcement employees to pay them overtime only if they work more than 171 hours in a single work period. 29 U.S.C. § 207(k); 29 C.F.R § 553.230(b). The 207(k) exemption is an affirmative defense on which defendant has the burden of proof. Cf. Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974) (stating that "the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof.") Whether defendant qualifies for the 207(k) exemption is normally an issue for the jury. Barefield v. Village of Winnetka, 81 F.3d 704, 710 (1996). Thus, defendant can prevail on its motion only if the undisputed facts unequivocally demonstrate that it qualifies for the exemption.

The FLSA regulations define work period as "any established and regularly recurring period of work which . . . cannot be less than 7 consecutive days nor more than 28 consecutive days." 29 C.F.R. § 553.224(a). Public employers can establish a 207(k) work period by declaring their intent to do so or by demonstrating that their employees "actually work a regularly recurring cycle of

between 7 and 28 days." Spradling v. City of Tulsa, 95 F.3d 1492, 1505 (10th Cir. 1996) (internal quotation marks and citations omitted); Barefield, 81 F.3d at 710 (holding that declaration of intent is not necessary if the "factual criteria" for the exemption are met).

In defendant's view, the undisputed facts establish that the patrol officers and sergeants[1] actually work a regularly recurring cycle of 28 days. According to defendant, the officers work four cycles of five days on/two days off and have the same two days off (e.g., Monday and Tuesday) during each 28-day period. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 29-31.) After the fourth cycle is complete, a new 28-day period begins and the days off rotate. So an officer who has Mondays and Tuesdays off in one period, may have Wednesdays and Thursdays off in the next. (Id. ¶ 32.)

There is evidence to support defendant's view. Police Chief Beem and former Police Chief Crafton both testified that the plaintiffs work on a 28-day schedule. (Exs. Def.'s Mot. Summ. J. & Stmt. Facts, Ex. K, Beem Aff. ¶ 8; id., Ex. L, Beem, Aff. ¶¶ 5-11; id., Ex. G., Crafton Dep. at 38-41;) A number of the plaintiffs agreed. (See, e.g., id., Ex A, Acke Dep. at 25-26; id., Ex. A, Butt Dep. at 13-14; id., Ex A, Cates Dep. at 17-19; id., Ex. A, Chavez Dep. at 16.)

But the record does not unequivocally establish that the schedule operates the way defendants describe it. The police department schedules submitted by both parties, though they run for 28 days, do not show that all officers had a five days on/two days off schedule or the same two days off throughout a given 28-day period. (See Exs. Def.'s Mot. Summ. J. & Stmt. Facts, Ex. E, Sauk Village Police Department Schedule, Robertson & Mountford; App. Exs. Pls.' LR 56.1(b) Stmt., Ex. 20, Van Gessel, Grossman, D'Anna, Holevis and Lesniak.) The schedule submitted by plaintiffs,

---

[1]The parties agree that plaintiffs Butt, Chavez and Zurbriggen, who are or were employed as TCOs, are not engaged in law enforcement activities. (See Def.'s Reply Pls.' LR 56.1(b) Stmt. ¶ 21.) Thus, they are not subject to the 207(k) exemption.

for example, shows that plaintiff Lesniak, was off one day, worked the next four, was off two days, worked the next four, was off one day, worked the next two, was off one day, worked the next five, was off two days, worked the next five, and was off one day. (App. Exs. Pls.' LR 56.1(b) Stmt., Ex. 20.) The same schedule shows that plaintiff D'Anna worked one day, was off one day, worked the next five days, was off one day, worked the next three days, was off two days, worked the next six days, was off two days, took the next three days off, worked two days and was off two days. (Id.) Similarly, one of the schedules submitted by defendant shows that plaintiff Robertson worked five days, took one day off, had four days off, worked the next seven days, had two days off, worked the next five days, had two days off and worked the next two days. (Exs. Def.'s Mot. Summ. J. & Stmt. Facts, Ex. E, Sauk Village Police Department Schedule.) Standing alone, these schedules raise an issue of fact as to whether plaintiffs had a regularly recurring 28-day period of work.

The schedules are not, however, the only evidence that cast doubt on the existence of a 28-day work period for the patrol officers and sergeants. The 1996-1999 and 1999-2002 CBAs between defendant and the union representing the patrol officers say that the "normal work cycle shall not exceed fifty-six (56) days."[2] (Exs. Def.'s Mot. Summ. J. & Stmt. Facts, Ex. E, 1996-1999 Sauk Village/FOP Lodge #234 Agreement, § 17.2; id., Ex. E, 1999-2002 Sauk Village/FOP Lodge #234 Agreement, § 17.2.) Defendant's schedule posting practices also suggest that there is a 56-day work period. Rather than posting a single 28-day schedule, defendant posts two simultaneously, the same practice that it followed when the officers rotated shifts every 56 days. (Pls.' LR 56.1(b) Stmt., Ex.

---

[2]Interestingly, the CBAs that cover the TCOs, to whom the exemption does not apply, define their normal work cycle as "the twenty eight (28) day schedule period." (Exs. Def.'s Mot. Summ. J. & Stmt. Facts, Ex. E, 1998-2001 Sauk Village/FOP Communications Division Agreement, § 17.2; id., Ex. E, 1996-1998 Sauk Village/FOP Communications Division Agreement, § 17.2.)

-8-

15, Crafton Dep. at 30-31; id., Ex. 10, Schwertfeger Dep. at 17-18; id., Ex. 11, D'Anna Dep. at 17-18; id., Ex. 13, Ampeliotis Dep. at 24, 26; Exs. Def.'s Mot. Summ. J. & Stmt. Facts, Ex. A, Acke Dep. at 25-27.)

Defendant says that the schedule posting practice is mandated by the CBAs and supports the inference of a 28-day work period. Under the heading "Normal Work Schedule," the patrol officers' CBAs state: "The present work schedule shall continue in effect and shall be posted at least two (2) cycles in advance. . . ." (Exs. Def.'s Mot. Summ. J. & Stmt. Facts, Ex. E., 1996-1999 Sauk Village/FOP Lodge #234 Agreement, § 17.3; id., 1999-2002 Sauk Village/FOP Lodge #234 Agreement, § 17.3.) Viewed favorably to defendant, this provision does suggest a 28-day work period. Viewed in plaintiffs' favor, however, as it must be on defendant's motion, the CBAs' declarations of a 56-day work cycle, certain plaintiffs' testimony that the work period is 56 days long and the fact that defendant's practice of posting two 28-day schedules dates back to the days when the officers rotated shifts every 56 days, supports the inference that the work period is 56 days long.

Moreover, the Sauk Village Employee Manual, which the parties agree is applicable to the sergeants, says that police employees are subject to a 14-day work period. (Exs. Def.'s Mot. Summ. J. & Stmt. Facts, Ex. E, Sauk Village Employee Manual, § 7 at 19; Def.'s Reply Pls.' LR 56.1(b) Stmt. ¶ 24.) Consistent with the manual and the CBAs' overtime provisions, defendant pays plaintiffs every two weeks, and pays them overtime for any hours over 80 that they work in that period. (Pls.' LR 56.1(b) Stmt., Ex. 5, Payroll Records; id., Ex. 6, 1996-1999 Sauk Village/FOP Lodge #234 Agreement, § 17.5; Exs. Def.'s Mot. Summ. J. & Stmt. Facts, Ex. E, Sauk Village Employee Manual, § 7 at 19; id., Ex. E, 1999-2002 Sauk Village/FOP Lodge #234 Agreement §

17.5; id., Ex. E, 1998-2001 Sauk Village/FOP Communications Division Agreement, § 17.1; id., Ex. E, 1996-1998 Sauk Village/FOP Communications Division Agreement, § 17.1.)

In short, the record does not establish that plaintiffs have a regularly recurring work period of 28 days or any other duration. Defendant's entitlement to the 207(k) exemption, therefore, must be determined by a jury.

Defendant can still prevail on its motion, however, if the record establishes that plaintiffs do not, in fact, work over 40 hours in one workweek. 29 U.S.C. § 207(a)(1). Defendant claims that they did not. Though it does not dispute that the roll call is compensable work time, defendant argues that those 15 minutes are offset by the non-compensable break periods, a 30-minute meal period and two 15-minute breaks, for which it pays plaintiffs each day. Indeed, defendant points out, the officers and TCOs agreed in their respective CBAs to offset the 15-minute roll call time against the hour of meal and break time for which defendant pays them daily. (See Exs. Def.'s Mot. Summ. J. & Stmt. Facts, Ex. E, 1996-1999 Sauk Village/FOP Lodge #234 Agreement, § 17.5; id., Ex. E, 1999-2002 Sauk Village/FOP Lodge #234 Agreement § 17.5; id., Ex. E, 1998-2001 Sauk Village/FOP Communications Division Agreement, § 17.1; id., Ex. E, 1996-1998 Sauk Village/FOP Communications Division Agreement, § 17.1.)

As a matter of law, however, the 15-minute break periods cannot be offset against the roll call time. The FLSA regulations require employers to count "[r]est periods of short duration, running from 5 minutes to about 20 minutes" as "hours worked." 29 C.F.R. § 785.18. Thus, defendant must compensate plaintiffs for the fifteen-minute break periods no matter what the CBAs say. Barrentine, 450 U.S. at 740 (noting that "FLSA rights cannot be abridged by contract").

Moreover, defendant can offset the 30-minute meal period only if it is non-compensable time for which it voluntarily pays plaintiffs. Under the FLSA, meal periods are non-compensable only if the employee is "completely relieved from duty" during the meal period. 29 C.F.R. § 785.19 (a). "[A] law enforcement employee is completely relieved from duty during a meal period when the employee's time is not spent predominantly for the benefit of the employer." Alexander v. City of Chicago, 994 F.2d 333, 337 (7th Cir. 1996) (internal quotation marks and citation omitted). If "a police officer is unable comfortably and adequately to pass the mealtime because the officer's time or attention is devoted primarily to official responsibilities," he must be paid for the meal period. Id. (internal quotation marks and citation omitted).

Plaintiffs argue that their mealtimes were spent predominantly for the benefit of defendant, not because their personal activities were too restricted during meal breaks,[3] but because they were rarely permitted to take a thirty-minute break from their duties to eat a meal. (See Pls.' Mem. Law Answer Def.'s Mot. Summ. J. at 11.) Though defendant contests this claim, the record reveals a genuine issue of fact on whether plaintiffs were actually required to work through their meal periods.

Chief Beem admitted that the Department was "very short-handed" from June to December 1998. (App. Exs. Pls.' LR 56.1(b) Stmt., Ex. 8, Beem Dep. at 58.) Her predecessor, former Chief

---

[3]The parties agree that during meal periods: (1) officers and sergeants had to remain within the nine square miles of the Village (Def.'s Reply Pls.' LR 56.1(b) Stmt. ¶11a); (2) officers and sergeants were required to stay in uniform (id. ¶ 11b); (3) officers and sergeants were required to keep their weapons with them (id. ¶ 11c); (d) officers and sergeants had to keep their radios on (id. ¶ 11d); (4) TCOs had to remain inside the police station (id.); and (5) all plaintiffs were required to respond to emergencies (id. ¶ 11e). Within these restrictions, it is undisputed that plaintiffs were free to do whatever they wished during their meal breaks. (Pls.' Answers & Objections Def.'s LR 56.1(a) Stmt. ¶¶ 81, 83; Def.'s LR 56.1(a) Stmt. ¶¶ 81, 83; App. Exs. Pls.' LR 56.1(b) Stmt., Ex. 10, Schwertfeger Dep. at 25-26.)

Crafton, testified that between 1996 and his departure in 1998, the Department did not have enough staff:

> to provide coverage without overworking people for their time off, the sick days, vacation days, comp days, personal days, [which] created a manpower shortage because people wanted to take that time.
>
> If we needed people for working to cover minimum staffing, we needed more people to do that. We needed more people to cover benefit time.

(Id., Ex. 15, Crafton Dep. at 77.) The staffing situation, many of the plaintiffs testified, required them to work through most of their meal periods. (See id., Ex. 9, Corrie Dep. at 24-29; id., Ex 11, D'Anna Dep. at 29-30; id., Ex. 12, Sanders Dep. at 19, 23, 50; id., Ex. 13, Ampeliotis Dep. at 72-74; id., Ex. 30, Wagner Dep. at 64; see also id., Ex. 24, Davitt Dep. at 34-35, 44; Ex. 27, Chavez Dep. at 56; id., Ex. 28, Van Gessel Dep. at 71-72; id., Ex. 29, Grossman Dep. at 77; id., Ex. 31, Daigre Dep. at 95; id., Ex. 32, Holevis Dep. at 61; id., Ex. 33, Evans Dep. at 82; Exs. Def.'s Mot. Summ. J. & Stmt. Facts, Ex A., Butt Dep. at 34-37; id., Ex. A, O'Brien Dep. at 38-47; id., Ex. A, Vela Dep. at 89.)

Defendant denies that plaintiffs routinely worked through their meal breaks, and there is some evidence to support their position. Former Chief Crafton, for example, testified that he personally witnessed most of the plaintiffs taking their meal breaks. (See Exs. Def.'s Mot. Summ. J. & Stmt. Facts, Ex. G, Crafton Dep. at 13, 16-18, 60-63.) Moreover, some of the plaintiffs testified that they generally took a 30-minute meal break. (See, e.g., id., Ex. A, Acke Dep. at 37; id., Ex. A, Cates Dep. at 52; id., Ex. A, Evans Dep. at 28-29, 33, 40-42; id., Ex. A, Lesniak Dep. at 37-39; id., Ex. A, Mountford Dep. at 24, 29.) But defendant does not keep records of the frequency or duration of plaintiffs' meal breaks. (Def.'s Reply Pls.' LR 56.1(b) Stmt. ¶ 12.) Consequently, it is

plaintiffs' word against defendant's on this issue, a contest that, in the context of defendant's motion, plaintiffs must win.

Even if they did not receive a full 30 minutes for meals, defendant contends that plaintiffs regularly had a 15-20 minute meal break, time which can be offset against roll call. There are two problems with this argument. First, only four of the plaintiffs whose testimony defendant cites for the proposition, Mountford, Acke, Cates and Van Gessel, actually testified that they received 15-20 consecutive minutes to eat a meal during their shifts. (See Def.'s LR 56.1(a) Stmt. ¶ 87.) Second, a greater number of plaintiffs testified that they did not receive consecutive minutes of break time, but 15-20 minutes in total throughout their shift to eat, attend to personal business and use the washroom. (See Exs. Def.'s Mot. Summ. J., Ex. A, Lesniak Dep. at 50-51; id., Ex. A, Nietzel Dep. at 33-34; App. Exs. Pls.' LR 56.1(b) Stmt., Ex. 11, D'Anna Dep. at 46-47; id., Ex. 12, Sanders Dep. at 74; id., Ex. 13, Ampeliotis Dep. at 57-58.) If that is true, and at this stage we must assume that it is, plaintiffs received multiple coffee breaks, for which they must be compensated, not one non-compensable meal break. 29 C.F.R. §§ 785.18, 785.19. The evidentiary conflict on this issue is yet another reason why summary judgment is inappropriate in this case.

Defendant has one more string to its bow. To the extent plaintiffs worked through their meal periods, defendant argues, they did so voluntarily, not at its insistence, making the time non-compensable. Both Chief Beem and former Chief Crafton testified that the plaintiffs were not ordered to work during their meal periods, and the testimony of some of the plaintiffs backs them up. (Exs. Def.'s Responsive Docs. Opp'n Pls.' Mot. Summ. J., Ex. 1, Crafton Aff. ¶ 6; id., Ex. 2, Beem Aff. ¶ 3; App. Exs. Pls.' LR 56.1(b) Stmt., Ex 9, Corrie Dep. at 25; id., Ex 11, D'Anna Dep.

at 30; id., Ex. 12, Sanders Dep. at 50; Exs. Def.'s Mot. Summ. J., Ex. A, Evans Dep. at 33; id., Ex. A., Lesniak Dep. at 37; id., Ex. A, Mountford Dep. at 24.)

But defendant need not order plaintiffs to work through their meal breaks to render them compensable. Defendant must also pay for the meal breaks if it knew or had reason to know that plaintiffs worked through them. 29 C.F.R. 785.11 ("Work not requested but suffered or permitted is work time. . . . [If] [t]he employer knows or has reason to believe that [the employee] is continuing to work . . . the time is working time.") Defendant, of course, denies that such is the case. (See generally Exs. Def.'s Responsive Docs. Opp'n Pls.' Mot. Summ. J., Ex. 1, Crafton Aff.; id., Ex. 2, Beem Aff.) But there is sufficient evidence in the record to raise a genuine issue for trial on this point.

Read favorably to plaintiffs, defendant's policy on meal periods suggests that defendant knew its officers might have to work through their meal periods. The policy is set forth in a General Order, which states:

> Officers receive the following breaks *when work load permits*:
>
> 1-15 minute AM break
>
> 1-30 minute lunch break
>
> 1-15-minute PM break

(App. Exs. Pls.' LR 56.1(b) Stmt., Ex. 16, General Order 95-23) (emphasis added). Though defendant contends that the phrase "when workload permits" "implie[s] that the time of day that Plaintiffs could take each break depended on work load," the order literally says that plaintiffs may take 30-minute lunch breaks only when workload permits. (See Def.'s Reply Pls.' LR 56.1(b) Stmt. ¶ 17.)

The CBAs that defendant negotiated with the patrol officers' and TCOs' unions, read favorably to plaintiffs, also condition the meal periods on workload. The patrol officers' CBAs state: "In recognition of a paid 30 minute lunch and two 15 minute breaks (when practicable) in the work day employees will be required to attend a 15 minute 'roll call' . . . ." (Exs. Def.'s Mot. Summ. J. & Stmt. Facts, Ex. E, 1996-1999 Sauk Village/FOP Lodge #234 Agreement, § 17.5; id., Ex. E, 1999-2002 Sauk Village/FOP Lodge #234 Agreement, § 17.5.) The TCOs' CBAs state: "Each eight (8) hour work day shall be interrupted by a thirty (30) minute paid lunch break and two (2) fifteen (15) minute coffee breaks. Failure to secure said breaks as a result of work load shall not indicate payment of overtime." (Id., Ex. E, 1998-2001 Sauk Village/FOP Communications Division Agreement, § 17.2; id., Ex. E, 1996-1998 Sauk Village/FOP Communications Division Agreement § 17.2.)

These documents, coupled with defendant's admission that the Department was understaffed and plaintiffs' testimony that they worked through their lunch breaks because they were expected to do so (App. Exs. Pls.' LR 56.1(b) Stmt., Ex. 11, D'Anna Dep. at 75-76; id., Ex. 31, Daigre Dep. at 97; id., Ex. 33, Evans Dep. at 82; Exs. Def.'s Mot. Summ. J., Ex. A, O'Brien Dep. at 40-41) or because the staffing situation required it (see supra at 12), creates a genuine issue of fact on whether defendant knew or had reason to know plaintiffs were working through their meal periods. Defendant's motion for summary judgment is, therefore, denied.

**Plaintiffs' Motion for Summary Judgment**

As should be apparent from the foregoing discussion, plaintiffs' motion for summary judgment is also denied. Although the record does not establish that defendant is entitled to the

207(k) exemption or that plaintiffs are not entitled to overtime pay for attending roll call, viewed favorably to defendant there is sufficient evidence to warrant a trial on both issues. Consequently, plaintiffs' motion for summary judgment is also denied.

## Conclusion

For the reasons set forth above, defendant's motion to strike and the summary judgment motions of both plaintiffs and defendant are denied.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

**DATED:** 3-22-01